## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Adrian Pop, | ) | Case No. 04 B 43773 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable John D. Schwartz |
| ———————————————— | ) | |
| | ) | |
| Allan J. DeMars, Trustee, | ) | Adv. No. 06 A 1693 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Corneliu Danciu and Maria Danciu, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

This matter comes before the court on the motion filed by plaintiff, Allan J. DeMars, as

Trustee of the Chapter 7 estate of Adrian Pop ("Trustee"), for summary judgment against

Corneliu Danciu and Maria Danciu ("Defendants"). For the reasons set forth herein, the motion

will be granted in part.

Jurisdiction is properly in this court pursuant to 28 U.S.C. § 1334(b) and this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

The underlying bankruptcy proceeding was commenced on November 24, 2004 by the

filing of a voluntary petition for relief by Adrian Pop ("Debtor") under chapter 7 of the United

States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. This proceeding was commenced by the

Trustee on November 12, 2006. No attorney has ever appeared for the Defendants. This motion

for summary judgment was filed on February 8, 2007 with a Statement of Facts pursuant to Local

*22*

Bankruptcy Rule 7056-1 and with exhibits and a memorandum of law. The Defendants filed a

response, answering the allegations in the motion and submitting an affidavit of Maria Cornelia

Danciu ("Maria"), the Debtor's wife.[1] The papers submitted by the Defendants did not precisely

follow the Local Bankruptcy Rules, but the court is willing to provide some latitude to *pro se*

parties, particularly where, as here, sufficient information has been submitted to allow the court

to make findings of fact.[2]

## Findings of Fact

The following facts are uncontested. On November 27, 1996, title to 2105- 07 West

Lawrence, Chicago, Illinois ("Property") was conveyed to Maria by warranty deed from Stojko

Bozic and Nada Bozic. The Property is a multi-unit income producing property. Maria married

the Debtor on March 14, 1997. On September 8, 2000, Maria executed a quitclaim deed to the

Property in favor of herself and the Debtor as joint tenants, which was recorded on September 15,

2000.

The Defendants are Maria's parents. On August 16, 2004, the Debtor and Maria

conveyed to the Defendants all of their right, title and interest in the Property by quitclaim deed

for no consideration. The deed was recorded with the Office of the Cook County Recorder of

Deeds on October 4, 2004. The petition commencing this bankruptcy proceeding was filed on

November 24, 2004.

---

[1]She filed for divorce shortly before this case was filed.

[2]The Trustee filed a motion seeking to strike much of the Defendants' submissions. The court postponed a ruling on the motion and it will be denied as moot by order entered May 24, 2007.

-2-

Maria's affidavit, submitted to the court on behalf of her parents, the Defendants, added some meat to this bare bones story. She alleges that she purchased the Property with a down payment provided to her by her parents. She alleges that her parents built a garage on the Property and that they have always collected rents and paid the expenses of maintaining the Property. When they needed funds to make repairs to the Property after the City of Chicago cited the Property for Building Code violations, they were unable to obtain refinancing using the Property (ostensibly because they did not own it). Maria was also unable to obtain refinancing on her own and added the Debtor's name to the deed and mortgage. Maria's description becomes difficult to follow at this point. She claims that on September 8, 2000, she and her husband received some funds from the "mortgagor" in the amount of about $94,000 for their own personal use. A mortgagor is a borrower and she and the Debtor were the borrowers on the mortgage. She may have misused the term "mortgagor" to mean the lender.

She goes on to claim that she and the Debtor executed a quitclaim deed in favor of her parents in December, 2000 but never recorded it "because we were afraid that the bank would find out and take away the property." Later, she went on, the Debtor's business was slow and several liens were placed on the Property, at which point her parents "demanded that we quitclaim the [Property] immediately."

Maria's and the Defendants' documentation of this story does not support it. A stack of disorganized documents is attached to the Defendants' papers. Maria does not refer to specific exhibits or documents in her affidavit. The "Answer to Plaintiff's Motion for Summary Judgment" refers to exhibit letters, but none of the attached documents are labeled. The court did review the attached documents which tend to support the Trustee's facts and then some.

-3-

Copies of mortgage and title documents show that Maria owned the Property and was the

borrower on a November 27, 1996 mortgage with the Property as collateral for a $213,000 loan.

The "Answer to Plaintiff's Local Rule 7056-1 Statement" states that Maria held the Property "in

trust" for her parents, but there is no document to support that statement. The Defendants attach

copies of checks indicating that Maria and the Debtor received funds from the September 2000

refinancing of the Property. The Defendants characterize these funds as consideration for the

September 2004 transfer of the Property to them.

The Defendants submit copies of many checks, presumably indicating payment for

expenses on the Property such as insurance and utilities. The checks contain nothing to show

that they were made for the payment of expenses on a particular property. Further, the checks are

drawn on an account jointly held by Maria and the Defendants, not just the Defendants. Also

included are copies of joint tax returns, filed by Maria and the Debtor in 2001, 2002, 2003 and

2004. These returns show that Maria and the Debtor treated the Property as their own, declaring

the income and taking deductions for the expenses.

Finally, the Defendants attach copies of judgments against the Debtor's business,

including a *lis pendens* against the Property. These copies of judgments against the Debtor

contradict the Defendants' assertion that they were unaware that there were significant judgments

pending against the Debtor when they became the beneficiaries of the transfer of the Property.

### Conclusions of Law

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c), applicable to adversary proceedings by Fed.R.Bankr.P. 7056;

Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Wade v. Lerner New York,

Inc., 243 F.3d 319, 321 (7th Cir. 2001).  A court must view the record in the light most favorable

to non-movant, drawing all reasonable inferences in its favor.  Anderson v. Liberty Lobby, Inc. ,

477 U.S. 242, 106 S.Ct. 2505, 2510 (1986); Wade v. Lerner New York, Inc., 243 F.3d at 321.

Fed.R.Civ.P. 56(e) also provides that "[w]hen a motion for summary judgment is made

and supported as provided in this rule, an adverse party may not rest upon the mere ... denials of

the adverse party's pleading, but the adverse party's response ... must set forth specific facts

showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party."

Pursuant to Local Bankruptcy Rule 7056-1, the moving party is required to file with its

motion a statement of material facts as to which the moving party contends there is no genuine

issue, including specific references to the affidavits, parts of the record and other supporting

materials relied upon to support the facts.  The party opposing a summary judgment motion is

required by Local Bankruptcy Rule 7056-2 to respond "to each numbered paragraph in the

moving party's statement" and to make "specific references to the affidavits, parts of the record,

and other supporting materials relied upon." Local Bankr. R. 7056-2A(2)(a).  Most importantly,

"[a]ll material facts set forth in the [7056-1] statement required of the moving party will be

deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.

R. 7056-2B.

Section 548(a)(1)(A)

Section 548(a)(1)(A) of the Bankruptcy Code provided[3] in pertinent part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any
obligation incurred by the debtor, that was made or incurred on or within one year before
the date of the filing of the petition, if the debtor voluntarily or involuntarily--
(A) made such transfer or incurred such obligation with actual intent to hinder,
delay, or defraud any entity to which the debtor was or became, on or after the
date that such transfer was made or such obligation was incurred, indebted; ...

In order to prove a cause of action under section 548(a)(1)(A) of the Bankruptcy Code,

the Trustee must show that a transfer was effected with actual intent to defraud. "Direct proof of

actual intent to defraud is not required - indeed, it would be hard to come by - and a trustee can

prove actual intent by circumstantial evidence. [Citations omitted]. Courts often look to 'badges

of fraud' as circumstantial evidence. [Citations omitted]." Frierdich v. Mottaz, 294 F.3d 864,

867 (7th Cir. 2002). The Seventh Circuit goes on to describe these "badges of fraud" as follows.

These "badges" include: whether the debtor retained possession or control of the property
after the transfer, whether the transferee shared a familial or other close relationship with
the debtor, whether the debtor received consideration for the transfer, whether the transfer
was disclosed or concealed, whether the debtor made the transfer before or after being
threatened with suit by creditors, whether the transfer involved substantially all of the
debtor's assets, whether the debtor absconded, and whether the debtor was or became
insolvent at the time of the transfer.

Id. at 870.

It is undisputed that there was a transfer of the Property from the Debtor to the

Defendants within one year of the filing of the bankruptcy petition. The issue here is whether the

transfer was fraudulent. To determine whether there was fraudulent intent, the court must decide

---

[3] The changes to this section effected by BAPCPA do not apply to this adversary
proceeding.

whether the Trustee has proven the "badges of fraud." The most obvious badge of fraud is that the transferees are the in-laws of the Debtor, a "familial relationship."

The Defendants argue that Maria and the Debtor did not really own the Property, but in fact, all of the indicia of ownership point to them. They had recorded title. They took a mortgage on the Property in September 2000, representing to the bank that they owned the Property and could use it as collateral. Their joint tax returns, filed in 2001, 2002, 2003 and 2004 show that Maria and the Debtor treated the Property as their own, declaring the income and taking deductions for the expenses. Either all of the parties concerned were lying then or they are lying now.

Furthermore, the Debtor received no consideration for the Property. The Defendants argue that funds received by the Debtor and Maria at the September 8, 2000 closing constitute consideration for the August 2004 transfer. The Defendants have provided no proof of a connection between the two transactions. Nor do they have proof that the funds came from them. The documentation submitted by the Defendants indicate that the funds came directly from the title company. The Property belonged to the Debtor and his wife.[4] They were entitled to take equity out of the Property during a re-finance if they chose to do so.

Finally, according to the Statement of Financial Affairs filed by the Debtor, at the time of

---

[4]Disturbing to this court is Maria's assertion that she and the Debtor executed a quitclaim deed in favor of her parents in December, 2000 but never recorded it "because we were afraid that the bank would find out and take away the property." Her family seems to be playing a shell game in which they made misrepresentations to a lender in 2000 and the Internal Revenue Service in 2001, 2002, 2003 and 2004. Now they want this court to believe that they were not telling the truth then but are telling the truth now. The documents are clear and the parties are bound by the story that they have been telling for all this time, that Maria and the Debtor owned the Property until they transferred it to the Defendants in 2004.

the transfer, the Debtor was subject to five judgments totaling over $306,901. The Defendants

submitted copies of judgments that were entered in the spring and summer of 2004, just prior to

the date of the transfer. Maria states in her affidavit that her parents demanded that the Property

be transferred to them when the Debtor began to have business troubles and liens were placed

against the Property. In short, the evidence submitted by the Defendants tends to support the

Trustee's case that the Property was owned by the Debtor and his wife until they transferred it to

the Defendants for no consideration after the Debtor began to accumulate debt and a few short

months before the Debtor filed for bankruptcy protection.

Accordingly, the Trustee has made a *prima facie* case for a fraudulent transfer under

§548(a)(1)(A) of the Bankruptcy Code and the motion for summary judgment will be granted as

to this section of the Bankruptcy Code.


Section 550

The relevant portion of Section 550(a) of the Bankruptcy Code provides that "to the

extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for

the benefit of the estate, the property transferred, or, if the court so orders, the value of such

property, from – (1) the initial transferee of such transfer ..." Here, the Trustee is entitled to one-

half of the unencumbered value of the Property and one-half of the rents collected from the

petition date because the Debtor and Maria held the Property as joint tenants. Unfortunately, the

court cannot determine the value of the Property from the evidence presented. The only appraisal

provided to the court is seven years old. The Trustee would like the court to use the value

-8-

provided by the Debtor in his Schedules, but there is no foundation for the Debtor's assigned

value.  Therefore, a hearing will be set to determine the value of the Property as of the date of the

transfer.

<u>Conclusion</u>

For the foregoing reasons, the Trustee's motion for summary judgment will be granted to

the extent of the relief requested pursuant to §548(a)(1)A) of the Bankruptcy Code.  A hearing

will be held to determine the value of the Property so that the court can set the amount of the

Trustee's remedy pursuant to §550 of the Bankruptcy Code.

Date:   May 24, 2007

ENTERED:

John D. Schwartz
United States Bankruptcy Judge